# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CODY D. ROBINSON,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | Case No.:  **4:09-CV-1297-VEH** |
| ] | |
| **STATE FARM FIRE AND** ] | |
| **CASUALTY COMPANY,** ] | |
| ] | |
| **Defendant.** ] | |

## **MEMORANDUM OPINION**

**I.    INTRODUCTION**

This insurance coverage dispute was filed originally by Plaintiff Cody D. Robinson ("Robinson") in the Circuit Court of Etowah County, and removed to this court by Defendant State Farm Fire & Casualty Company ("State Farm") on June 26, 2009, on the basis of diversity jurisdiction.  (Doc. 1 ¶¶ 3, 7-8).   The case was reassigned to the undersigned on July 9, 2009.  (Doc. 7).

The plaintiff in the underlying lawsuit, John D. Crawford ("Crawford"), was added as a necessary party on July 25, 2009.  (*See* margin order filed on July 25, 2009 (granting State Farm's Motion to Join a Necessary Party)).  On August 5, 2009, State Farm filed a Motion for Summary Judgment (Doc. 13) and attached its supporting materials.

On September 25, 2009, Robinson countered by filing a Cross-Motion for Summary Judgment (Doc. 15) (the "Cross Motion") and a separate opposition (Doc. 16) to State Farm's Motion for Summary Judgment. State Farm followed on October 5, 2009, with a reply (Doc. 17) in support of its Motion for Summary Judgment, and on October 15, 2009, an opposition (Doc. 18) to Robinson's Cross Motion.

Robinson's filing deadline for a reply has passed, and both motions are now under submission consistent with Appendix II of the court's Uniform Initial Order (Doc. 8) entered on July 10, 2009. As discussed more fully below, State Farm's Motion for Summary Judgment is due to be granted, and Robinson's Cross Motion is due to be denied.[1]

## II.   STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this

---

[1] The court notes that State Farm requested oral argument within its Motion for Summary Judgment (Doc. 13 at 1), in a letter to the court dated August 5, 2009, and again by correspondence dated October 15, 2009. Robinson also sought it in his Cross Motion. (Doc. 15 at 1). However, due to the fact that this court has no questions about this straight forward coverage dispute, scheduling the case for oral argument is unnecessary, and the parties' separate requests for it to be set are due to be denied.

burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party cannot present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed. R. Civ. P. 56(a)-(b).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Although there are cross-motions for summary judgment, each side must still

establish the lack of genuine issues of material fact and that it or he is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

## III. STATEMENT OF MATERIAL FACTS

### A. Underlying Litigation

On April 5, 2007, Robinson was sued in the Circuit Court of Montgomery County, Alabama, by Crawford for defamation in a case styled *John D. Crawford v. Cody D. Robinson, individually, and Cody D. Robinson Campaign Committee*, CV-2007-900217. AF No. 1;[2] (*see also* Doc. 13 at Ex. A at 1). The state court

---

[2] The designation "AF" stands for admitted fact and indicates a fact offered by State Farm that Robinson has admitted in his written submissions on summary judgment or by virtue of any other evidence offered in support of his case. Whenever Robinson has adequately disputed a fact offered by State Farm, the court has accepted Robinson's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of State Farm's statement of facts as set forth in Doc. 13 and responded to by Robinson in Doc. 16. A number following a decimal point

complaint alleges that during the weeks preceding the Alabama General Election held on November 7, 2007, Robinson and his Committee published an internet website that included a link entitled "Contributions from Convicts!" which contained false and defamatory statements about Crawford. AF No. 2.

The pleading further states that the alleged defamatory language "resulted in significant and severe imputation and damage to [Crawford]'s reputation and character, and that of his business." (Doc. 13 at Ex. A ¶ 4). Crawford demanded a judgment from Robinson in an amount of no less than Five Million Dollars ($5,000,000). AF No. 4.

### B. Coverage Correspondence and Litigation

On July 30, 2007, Robinson received correspondence from State Farm advising him that State Farm was defending him under a "reservation of rights," while it further investigated the claim. AF No. 5.1. On November 1, 2007, Robinson received correspondence from State Farm advising him that State Farm would not provide coverage because "the loss does not meet the definitions of an occurrence, accident, bodily injury or property damage as defined by [the] Homeowners policy

---

corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 5.2) would indicate that the second sentence of paragraph 5 of State Farm's statement of facts is the subject of the court's citation to the record. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

of insurance." AF No. 5.2.

On April 6, 2009, Robinson wrote to State Farm and requested that State Farm reconsider its denial of Robinson's claim. AF No. 6.1. On June 10, 2009, Robinson sued State Farm in the Circuit Court of Etowah County, seeking a declaratory judgment that State Farm is obligated to defend and indemnify Robinson in the underlying suit filed by Crawford. AF No. 7.

### C. Applicable Policy Provisions

State Farm provided a homeowner's policy of insurance (policy number 01-GG-2562-5) (the "Policy") to Robinson. AF Nos. 8.1-8.2. The Policy contains the following pertinent provisions and exclusions:

### SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the

    amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

AF No. 8.3.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations.**

Certain words or phrases are defined as follows:

1.  **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

    **Bodily injury** does not include:

    a.  any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

    b.  the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

    c.  emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

7

\* \* \*

    7.    **"occurrence",** when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

        a.    **bodily injury;** or

        b.    **property damage;**

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

    8.    **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

\* \* \*

AF No. 8.4.

**IV.    ANALYSIS**

    **A.    Duty to Defend**

Under Alabama law, the duty to defend is greater than the duty to indemnify. *See Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977) ("If the allegations of the injured parties' complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured."); *see also Chandler v. Alabama*

*Mun. Ins. Co.*, 585 So. 2d 1365, 1367 (Ala. 1991) (same) (internal citations omitted).

Additionally, "[w]hen a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001) (citations omitted); *see also Blackburn v. Fidelity and Deposit Co. of Maryland*, 667 So. 2d 661, 670 (Ala. 1995) (same) (citing *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988)).

An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured.[3]  *Alfa Mutual Ins. Co. v. Morrison*, 613 So. 2d 381, 382 (Ala. 1993); *Ladner*, 347 So. 2d at 102; *see also St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Company Greystone, LLC*, 572 F.3d 893, 894-95 (11th Cir. 2009) ("Under Alabama law, whether an insurance company owes its insured a duty to

---

[3] As the Eleventh Circuit explained in *ERA Oxford, infra,* regarding choice of law:

> A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed. *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007). We are being asked to interpret an Alabama insurance policy; therefore, Alabama substantive law applies.

572 F.3d at 894 n.1.  Here, the insurance contract issues in this case are similarly governed by Alabama law.

provide a defense is determined primarily by the allegations contained in the complaint.") (footnote and citation omitted).  Generally, an insurer owes no duty to defend, if the complaint fails to aver a covered accident or occurrence. *Ladner*, 347 So. 2d at 102; *see also Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005) ("The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between [the injured person] and the insured prove a covered accident or occurrence."); *compare ERA Oxford*, 572 F.3d at 895 ("If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured.") (citation omitted).

### B.   Contract Interpretation

Under Alabama law, it is well established "that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured." *Chilton-Shelby*, 595 So. 2d at 1377; *see Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) ("To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company.").  It is equally well settled, however, that insurers have the right to limit their liability by writing policies with narrow coverage. *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987).  <u>If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy by making a new contract for the parties</u>.

> The first issue we must consider, then, is whether the term "real estate professional services" is ambiguous as to whether it includes business-related conduct of covered real estate agents and brokers or if it is limited to those services requiring the specialized knowledge of the profession. "A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." *Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1162 (Ala. 2006). <u>The parties, however, cannot create ambiguities by setting forth different interpretations or "[by inserting] . . . strained or twisted reasoning.</u>" *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). "Moreover, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Safeway Ins. Co. of Ala.*, 912 So. 2d at 1143. "<u>If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.</u>" *Id.* <u>Additionally, in determining whether an insurance policy is ambiguous, "a court cannot consider the language in the policy in isolation, but must consider the policy as a whole.</u>" *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999).

*ERA Oxford*, 572 F.3d at 898 (emphasis added).

As for the treatment of exclusionary language more particularly:

> "[W]hen ambiguity exists in the language of an exclusion, the exclusion will be construed so as to limit the exclusion to the narrowest application reasonable under the wording. *Guaranty National Ins. Co. v. Marshall County Board of Educ.*, 540 So. 2d 745 (Ala.1989). However, it is equally well settled that <u>in the absence of statutory provision to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage. If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties</u>. *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362 (Ala. 1987)."

*Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 800 (Ala. 2002) (emphasis added) (quoting *Sullivan v. State Farm Mut. Auto. Ins.*, 513 So. 2d 992, 994 (Ala. 1987)).

### C.  The Policy's Unambiguous Definition of an Occurrence

State Farm initially argues that no occurrence in the form of bodily injury is contained in the complaint against Crawford. The Policy unambiguously defines an occurrence as "an accident, including exposure to conditions, <u>which results in bodily injury or property damage</u>." Bodily injury in turn is defined to mean "physical injury, sickness, or disease to a person."

A review of Crawford's defamation complaint reveals no allegations asserting a sickness or disease caused by Robinson's conduct. The complaint is also devoid of any express bodily injury allegations.

Further, while Robinson maintains that courts have "characterized mental anguish as being included in the definition of 'bodily injury'" (Doc. 15 § III.B.2 (citing *American Economy Ins. Co. v. Fort Deposit Bank*, 890 F. Supp. 1011 (M.D. Ala. 1995)), he neglects to cite to any controlling authority for this proposition or

12

explain why the *Fort Deposit Bank* opinion should be persuasive here.[4]  Regardless, absent from the complaint are any specific allegations of mental anguish suffered by Crawford.

Instead, Robinson contends that for the purposes of declaring rights under the Policy, mental distress damages should be presumed to exist in Crawford's lawsuit due to the nature of a defamation claim and further that, by reading in the presence of emotional damages, coverage under the bodily injury prong of an occurrence under the Policy is triggered.  (*See, e.g.*, Doc. 16 ¶ 45).  In making this particular argument, Robinson cites to no supporting <u>coverage</u> cases, controlling or otherwise.

This court finds Robinson's position to be confusing and unpersuasive. Therefore, the court agrees with State Farm that Robinson has failed to show a bodily injury occurrence within the meaning of the Policy based upon the absence of any express allegations of bodily injury or mental damage asserted against him by Crawford.

### D.    The Policy's Unambiguous Mental Anguish Exclusion

Alternatively, State Farm contends even "assuming arguendo that the

---

[4]  The court notes that the obligation to develop issues on summary judgment belongs to the parties.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)); *id.* at 599 ("[T]he onus is upon the parties to formulate arguments[.]").

underlying complaint does allege a 'mental injury,' coverage is still not available [because] [a]ny alleged 'mental injury' must arise 'out of physical injury to some person.'" (Doc. 13 ¶ 19). In this instance, akin to *ERA Oxford*, this court must determine whether the use of the admittedly undefined term "mental anguish" is ambiguous in the context of the exclusion to Robinson's entire Policy.

The court concludes that no ambiguity exists in the use of mental anguish and related terms in crafting the exclusion, that Robinson's suggested reading of the exclusion is entirely strained,[5] and that State Farm's interpretation is the correct one. As persuasive support, this court relies upon *Gunnin v. State Farm and Cas. Co.*, 508 F. Supp. 2d 998 (M.D. Ala. 2007), which similarly addressed coverage under a State Farm homeowner's insurance policy in the context of an underlying complaint for "negligence, conversion, fraud, and defamation." *Id.* at 1001.

In *Gunnin*, the policy language examined by the court is identical to that involved in this case:

> Looking first at the State Farm policy at issue, the policy makes clear that State Farm would defend suits "brought against an insured for

---

[5] For example, Robinson argues that "because State Farm has failed to give the phrase definition, any mental anguish should therefore be considered physical damage to a person's body pursuant to the 'ordinary intelligence' threshold." (Doc. 16 ¶ 26). However, giving credence to Robinson's position would render the exclusionary language entirely nonsensical. More specifically, "unless it arises out of actual physical injury to some person" would have no meaning because the preceding mental anguish terminology would simultaneously be a physical injury under Robinson's scenario.

> damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**." Doc. 27-3 at 27 (emphasis added). <u>The policy defines bodily injury as "physical injury, sickness or disease to a person" and specifically excludes from that definition "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.</u>" Doc. 27-3 at 13.

508 F. Supp. 2d at 1002 (emphasis by underlining added).

As the *Gunnin* court explained in finding no coverage:

> Comparing the provisions of the policy with the allegations in the Bearden complaint, it is evident that no bodily injured is alleged in the Bearden complaint, at least as bodily injury is defined by the policy. While the Bearden complaint alleges various mental injuries, such injuries are excluded by the policy unless they arise out of actual physical injury to some person and the Bearden complaint does not allege any such physical injury. The closest the complaint comes to making an allegation of bodily injury is reference to the Bearden plaintiffs' "pain and suffering." <u>However, pain and suffering does not necessarily equate with physical injury and, absent some specific allegation of physical injury, this Court will not equate the two</u>. *See, e.g., Home Ins. Com. v. Hartford Fire Ins. Co.*, 379 F. Supp. 2d 1282, 1289 (M.D. Ala. 2005) (Coody, M.J.) (applying South Carolina law).

508 F. Supp. 2d at 1002-03 (emphasis added) (footnotes omitted).

### E. State Farm's Alleged Failure to Investigate

As an alternative argument on summary judgment, Robinson maintains that "State Farm failed to conduct the required investigation prior to denying coverage." (Doc. 15 at 21 (emphasis omitted)). Assuming without deciding that Robinson is correct that State Farm failed to properly investigate before denying coverage under

15

the Policy, Robinson has not cited to <u>any</u> controlling authority which establishes that the mere failure to investigate by an insurer, without more, somehow creates coverage for the insured when the Policy clearly would not otherwise provide for it. Such an omission is fatal to Robinson's position on summary judgment. *See Dunmar, supra,* at 13 n.4.

### F.     The Policy's Property Damage Prong

Robinson concedes that he is not seeking coverage under the Policy by virtue of an occurrence in the alternative form of property damage. (Doc. 16 at 17 § 3 ("Robinson does not allege that there is 'property damage' in the underlying complaint and does not seek coverage under the policy for any such damages.") (emphasis omitted)). Therefore, the court does not need to reach an analysis of State Farm's Motion for Summary Judgment pertaining to this section of the Policy.

### V.     CONCLUSION

Accordingly, State Farm's Motion for Summary Judgment is due to be granted, and State Farm has no duty to defend or indemnify Robinson under the Policy. Relatedly, Robinson's Cross Motion is due to be denied, and Robinson's complaint for coverage under the Policy is due to be dismissed with prejudice. The court will enter an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 30th day of October, 2009.

                                          **VIRGINIA EMERSON HOPKINS**
                                          United States District Judge